**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHUNG TING YU.,

               Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

               Defendant.

Case No.

**COMPLAINT**

Plaintiff, Chung Ting Yu, (hereinafter, "Plaintiff" or "Yu"), an individual, hereby brings the present action against The Partnerships And Unincorporated Associations Identified on Schedule "A" attached hereto, (hereinafter, "Defendant") who is promoting, selling, offering for sale, and distributing goods utilizing unauthorized versions of Plaintiff's federally registered trademark. Defendant is promoting, selling, offering for sale and distributing its products throughout this district utilizing Plaintiff's registered trademark on various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" (hereinafter referred to collectively as "Seller IDs"). In support of its claims, Plaintiff alleges as follows:

**SUBJECT MATTER JURISDICTION**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a) – (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so

1

related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION

2.     Defendant is subject to personal jurisdiction in the Northern District of Illinois because it purposefully directs its activities toward and conducts business with consumers throughout the United States, including within the State of Illinois and the Northern District of Illinois, operating under at least the Seller IDs on the internet based e-commerce stores accessible in Illinois.

3.     Defendant is subject to personal jurisdiction in this judicial district because it has purposefully directed some portion of its illegal activities towards consumers in the State of Illinois through the advertisement, offer to sell, sale, and/or shipment of goods utilizing Plaintiff's federally registered Hollow Halloween Works in Illinois and Plaintiff's claims arise out of those activities.

4.     Alternatively, Defendant is subject to personal jurisdiction in this District pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

5.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction and not a resident in the United States and therefore there is no District in which an action may otherwise be brought.

6.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendant is, upon information and belief, an alien engaged in infringing activities and causing harm within this

2

district by advertising, offering to sell, selling and/or shipping products depicting Plaintiff's registered designs to consumers into this District.

## INTRODUCTION

7.      This action has been filed by Plaintiff to combat online e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's JEWELRIESHOP trademark, which is covered by U.S. Trademark Registration No. 5,581,294 ("JEWELRIESHOP Mark") for use with goods in Class 14 and 35, registered on October 9, 2018.

8.      The JEWELRIESHOP Mark registration is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the JEWELRIESHOP Mark is attached hereto as Exhibit One. The stylized mark appears below.



9.      The Defendant created the Defendant Internet Store and designed it to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. Defendant attempts to avoid liability by going to great lengths to conceal both its identity and the full scope and interworking of its illegal operation. Plaintiff is forced to file this action to combat Defendant's infringement and/or counterfeiting of Plaintiff's registered JEWELRIESHOP Mark as well as to protect unknowing consumers from purchasing unauthorized products utilizing the JEWELRIESHOP Mark over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, loss of control of the JEWELRIESHOP Mark, and

3

garnishment of his valuable JEWELRIESHOP Mark as a result of Defendant's actions and seeks injunctive and monetary relief.

## THE PLAINTIFF

10.     Plaintiff Chung Ting Yu (hereinafter, "Plaintiff" or "Yu") is a Chinese Individual having his principal place of business at Rm 306, Boon Yuet House, Choi Wan Estate, Kln, Hong Kong.

11.     At all times relevant, Plaintiff has marketed and sold jewelry items in Class 14 and 35 ("Plaintiff Products") through at least the Amazon.com e-commerce platform utilizing the JEWELRIESHOP Mark. Sales and revenue derived from merchandise sold under the JEWELRIESHOP Mark have been significant.

12.     Plaintiff is the owner of all rights, title and interest in and to the JEWELRIESHOP Mark, U.S. Trademark Registration No. 5,581,294. The registration is valid, subsisting, unrevoked and uncancelled. The registration for the JEWELRIESHOP Mark constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the JEWELRIESHOP Mark pursuant to 15 U.S.C. § 1057(b).

13.     As detailed below, Plaintiff has been using the mark since September 1, 2016, in connection with the advertising and sale of Plaintiff Products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

14.     The JEWELRIESHOP Mark has been widely promoted, both in the United States, Australia, and Canada.

15.     Genuine products bearing the JEWELRIESHOP Mark are distributed through Plaintiff's internet stores on at least the Amazon.com platform. Sales of Plaintiff Products via

Plaintiff's internet stores represent the majority of Plaintiff's business. The internet stores feature proprietary content, images, and designs exclusive to Plaintiff.

16. The JEWELRIESHOP Mark has never been transferred, assigned or licensed to the Defendant in this matter.

17. Plaintiff's JEWELRIESHOP Mark is a symbol of Plaintiff's quality, reputation and goodwill and has never been abandoned.

18. Plaintiff has expended substantial time, money, and other resources developing, advertising and otherwise promoting the JEWELRIESHOP Mark.

**THE DEFENDANT**

19. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

20. Defendant is an individual and business who conducts and engages in business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces identified in Schedule "A". Defendant targets the United States, including Illinois, and has solicited, marketed, promoted, and advertised its products in a manner that violates Plaintiff's rights in its federally protected JEWELRIESHOP Mark.

21. Plaintiff is currently unaware of the identity and/or location of Defendant. However, on information and belief, Defendant is an individual or business entity who resides in the People's Republic of China or other foreign jurisdictions. Defendant conducts business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Store identified in Schedule A, attached hereto. Defendant targets the

United States, including Illinois, and has offered to sell and/or has sold and/or continues to sell products utilizing infringing and/or counterfeit versions of the JEWELRIESHOP Mark ("Unauthorized Products") to consumers within the United States, including Illinois and in this Judicial District.

22. On information and belief, Defendant, either individually or jointly, operates one or more e-commerce stores including, but not limited to, those listed in Schedule A attached hereto. Tactics used by Defendant to conceal its identity and the full scope of its operation make it virtually impossible for Plaintiff to learn Defendant's true identity and the exact interworking of its network. If Defendant provides additional credible information regarding its identity, Plaintiff will take appropriate steps to amend the Complaint.

23. This lack of precise information notwithstanding, it is well established that e-commerce sales, including through e-commerce stores like those of Defendant, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* Exhibit Two, Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id*.

24. Further, third party service providers like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *See* Exhibit Three, Daniel C.K. Chow, Alibaba, Amazon, and

Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as Exhibit Four (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary). Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. *See* Exhibit Four at 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit Four at 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *See* Exhibit Three at 186–187.

25.     On information and belief, Defendant has engaged in fraudulent conduct when registering the Defendant Internet Store by providing false, misleading and/or incomplete information to Internet-based e-commerce platforms. On information and belief, Defendant has anonymously registered and maintained Defendant Internet Store to prevent discovery of its true identity and the scope of its counterfeiting and infringement network.

26.     On information and belief, Defendant regularly registers or acquires new seller aliases for the purpose of offering for sale and selling the Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by the online infringers, such as Defendant, to conceal their identities and the full scope and interworking of their counterfeiting and infringement operation and to avoid being shut down.

27.     Infringers and counterfeiters, such as Defendant, typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendant maintains off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28.     In sum, Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store name by the Defendant that has the appearance of being fabricated. Even if a company name appears to be legitimate, review of the Defendant Internet Store reveals vague or non-existent company descriptions and descriptions of company purpose. Thus, the Defendant Internet Store are using fake online storefronts designed to appear to be selling genuine Plaintiff Products while they are actually selling inferior imitations of Plaintiff Products.

29.     Defendant's unauthorized use of the JEWELRIESHOP Mark in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into the United States, including Illinois, is likely to cause and has caused confusion among consumers and is irreparably harming Plaintiff.

## DEFENDANT'S UNLAWFUL CONDUCT

30.     The success of Plaintiff's JEWELRIESHOP brand has resulted in significant counterfeiting and infringement. Plaintiff has identified numerous domain names linked to marketplace listings on certain platforms including the Defendant Internet Store, which was

offering for sale, selling, and importing products utilizing counterfeit and/or infringing versions of the JEWELRIESHOP Mark to consumers in Illinois, this Judicial District, and throughout the United States.

31. Upon information and belief, Defendant facilitates sales by designing the Defendant Internet Store so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler selling genuine Plaintiff Products. The Defendant Internet Store looks sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. The Defendant Internet Store includes images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from that of an authorized retailer. Defendant further perpetuates the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers. Plaintiff has not licensed or authorized Defendant to use its JEWELRIESHOP Mark and Defendant is not an authorized retailer of genuine Plaintiff Products.

32. Upon information and belief, Defendant also deceives unknowing consumers by using the JEWELRIESHOP Mark without authorization within the content, text, and/or meta tags of its websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff Products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Store listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Plaintiff Products.

33. Online e-commerce store operators, such as Defendant, often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of e-commerce stores selling infringing and/or counterfeit products. For

example, to avoid detection, online e-commerce store operators, such as Defendant, register new e-commerce stores using names and physical addresses that are incomplete, contain randomly typed letters, or fail to include cities or states. Online e-commerce store operators, such as Defendant, regularly create new websites and online marketplace accounts on various platforms using the identity listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such online e-commerce store registration patterns are one of many common tactics used by online e-commerce store operators, such as Defendant, to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

34. Defendant in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendant will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

35. Further, counterfeiters, such as Defendant, typically operate multiple credit card merchant accounts and vendor accounts such as PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, the foreign Defendant maintains off-shore bank accounts and regularly move funds from its payment accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of payment transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based accounts to China-based bank accounts outside the jurisdiction of this Court.

36.     Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continue to use the JEWELRIESHOP Mark in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet. The Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell Unauthorized Products into the United States, including Illinois.

37.     Defendant's use of the JEWELRIESHOP trademark in connection with the advertising, distribution, offering for sale, and sale of counterfeit products, including the sale of counterfeit and infringing JEWELRIESHOP products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. §1114)

38.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

39.     This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the JEWELRIESHOP Mark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

40.     Defendant has sold, offered to sell, marketed, distributed, and advertised, and/or is still selling, offering to sell, marketing, distributing, and advertising products in connection with the JEWELRIESHOP Mark without Plaintiff's permission.

41.     Defendant has infringed Plaintiff's rights in the JEWELRIESHOP Mark by, among other things, using in commerce the identical and confusingly similar name "JEWELRIESHOP"

in connection with the promotion, advertising, sale, offering for sale, and distribution of counterfeit versions of Plaintiff Products.

42. Plaintiff is the exclusive owner of the JEWELRIESHOP Mark. Plaintiff's United States Registration for the JEWELRIESHOP Mark is in full force and effect. *See* Exhibit One. Upon information and belief, Defendant has knowledge of Plaintiff's rights in the JEWELRIESHOP Mark and is willfully infringing and intentionally using counterfeit versions of the JEWELRIESHOP Mark.

43. Defendant's willful, intentional, and unauthorized use of the JEWELRIESHOP Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public. Through Defendant's infringing activity, Defendant has compromised the goodwill of the JEWELRIESHOP Mark by depriving Plaintiff of the exclusive control over the customer experience and guarantees of the brand.

44. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

45. Plaintiff has no adequate remedy at law, and if Defendant's actions are not preliminarily or permanently enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its JEWELRIESHOP Mark.

46. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit JEWELRIESHOP products.

47. Plaintiff is entitled to recover his reasonable costs and attorneys' fees incurred in prosecuting this action.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

48.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.     Defendant's promotion, marketing, offering for sale, and sale of counterfeit products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendant's Unauthorized Products by Plaintiff.

50.     By using the JEWELRIESHOP Mark in connection with the sale of the Unauthorized Products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products. Specifically, by using the JEWELRIESHOP brand to promote their counterfeit products, Defendant wrongfully implies to potential customers that customers can expect Defendant to conform with the customer service standards and provide warranties or guarantees associated with the JEWELRIESHOP brand.

51.     Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     Plaintiff is entitled to recover its reasonable costs and attorney's fees incurred in prosecuting this action.

13

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

53. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54. Defendant has engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit JEWELRIESHOP products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiff Products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

55. The foregoing Defendant's acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

56. Plaintiff has no adequate remedy at law, and Defendant's conduct has caused damage to the JEWELRIESHOP Mark's reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the JEWELRIESHOP Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution,

14

marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the JEWELRIESHOP Mark;

b.      passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the JEWELRIESHOP Mark;

c.      committing any acts calculated to cause consumers to believe that Defendant's counterfeit JEWELRIESHOP products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.      further infringing the JEWELRIESHOP Mark and damaging Plaintiff's goodwill; and

e.      manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the JEWELRIESHOP Mark, or any reproductions, counterfeit copies, or colorable imitations thereof, or the JEWELRIESHOP Mark;

f.      using, linking to, transferring, selling, exercising control over, or otherwise owning online marketplace accounts that are being used to sell products or inventory not authorized by Plaintiff which bears the JEWELRIESHOP mark;

15

g.      operating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not authorized by Plaintiff which bear the JEWELRIESHOP mark;

2)      Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon.com, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a.      disable and cease providing services being used by Defendant, currently or in the future, to engage in the sale of goods using the JEWELRIESHOP mark;

b.      disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of goods using without authorization the JEWELRIESHOP mark; and

c.      take all steps necessary to prevent links from Defendant Internet Store from displaying in search results, including, but not limited to, removing links to Defendant Internet Store from any search index.

3)      For Judgment in favor of Plaintiff against Defendant that they have:

a.      willfully infringed Plaintiff's rights in its federally registered trademark pursuant to 15 U.S. Code § 1114;

b.      otherwise injured Plaintiff's business of Plaintiff by their acts and conduct set forth in this Complaint;

16

c. That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117 or in the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the JEWELRIESHOP Mark; and

d. That Plaintiff be awarded its reasonable attorneys' fees and costs as available under 15 U.S.C. § 1117, and other applicable law.

4) Entry of an Order that, upon Plaintiff's request, Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or ecommerce store names used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

5) Entry of an award of prejudgment interest on the judgment amount; and

6) Award any and all other relief that this Court deems just and proper.

Respectfully submitted this 10th day of April, 2026.

/s/ William J. Hausman
Bar No. 6353083
Ford Banister LLC
305 Broadway – Floor 7
New York, NY 10007
Telephone: 212-500-3268
Email: whausman@fordbanister.com
*Counsel for Plaintiff*